IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

NATIN PAUL, et al,                          §
                                            §
            Plaintiffs,                     §
                                            §
v.                                          §    CIVIL ACTION NO. 1:21-CV-00954-LY
                                            §
RANI A. SABBAN, et al,                      §
                                            §
            Defendants.                     §

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

Respectfully submitted,

CLARK HILL PLC

BY:    _/s/  _Jose Vela Jr._ _____
       Jose Vela Jr.
       Attorney in Charge
       Texas State Bar No. 24040072
       909 Fannin Street, Suite 2300
       Houston, Texas 77010
       713.951.5607
       713-951-5660 (fax)
       jvela@clarkhill.com

## I. <u>INTRODUCTION</u>

"A man's home is his castle" is embodied in the Bill of Rights. The right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures shall not be violated."  On August 14, 2019, with guns drawn, the Defendants pierced and invaded the sanctity of Nate Paul's home and companies. They intentionally, maliciously, and without any regard trampled on Nate's civil liberties. Without a search warrant, probable cause, or any justification, the Defendants detained, intimidated, and terrorized Nate and his employees, ransacked Nate's home and businesses, damaged Nate and his businesses' property, and looted Nate and his business' property. Despite Nate or his employees' pleas to be given the opportunity to call counsel, the Defendants ignored their pleas and refused to release them, permit contact with their attorney, provide a search warrant, or give any reason for their misdeeds. While mocking Nate and his family, the Defendants placed a framed picture of Michael Douglas' character "Gordon Gekko" from the movie "Wall Street" in Nate's home office in front of a picture of his children. To conceal their tracks, the Defendants disabled and destroyed Nate's security cameras and cut the internet service lines to his home. Furthermore, the Defendants tampered or altered official government documents in connection with the searches and seizures.

In so doing, these Defendants abused their shield, violated Nate's Fourth Amendment rights , dishonored their solemn oath, and shattered their covenant with the American People.

## II. <u>PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS</u>

As a result of Defendants' unlawful actions, Plaintiffs have suffered significant and ongoing economic damage, that continues to mount. Those economic damages began to accrue on or after October 21, 2019, and are ongoing, pinpointing Plaintiffs' cause of action to that date.

Federal law, not state law, determines when a Section 1983 cause of action accrues, and federal law states that a claim accrues when a plaintiff knows or has reason to know of the injury which is the basis of the action. *Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir. 1980). Until a plaintiff is in possession of the critical facts that he was hurt and who inflicted the injury, the statute of limitations does not commence to run. *Id*. The statute of limitations for a Section 1983 claim is determined by the statute of limitations for personal injuries in the state where the injuries occurred. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). Texas' statute of limitations is two years for personal injury claims. *Id*. The same statute of limitation rule applies in a *Bivens* cause of action. *Pena v. United States*, 157 F.3d 984, 987 (5th Cir.1998).

In the present case, the Plaintiffs sustained economic damages due to and after the Defendants' unlawful searches and seizures. The Plaintiffs' legal injuries were divided into separate and distinct damages: loss of economic opportunities (Compl. ¶¶ 20, 29-30, 38-39, 47-48, 56-57); financial losses (Compl. ¶¶ 19, 30, 39, 48, 57); damaged business reputation (Compl. ¶¶ 19, 30, 39, 48, 57); damaged business affairs (Compl. ¶¶ 19, 30, 39, 48, 57); loss of possession and use of property (Compl. ¶¶ 29-30, 38-39, 47-48, 56-57); property damage (Comp. ¶¶ 29-30, 38-39, 47-48, 56-57); emotional distress (Compl. ¶¶ 18, 29-30, 38-39, 47-48, 56-57); humiliation (Compl. ¶¶ 18, 30, 39, 48, 57); and embarrassment (Compl. ¶¶ 18, 30, 39, 48, 57). The Plaintiffs suffered separate and distinct economic damages after the date of the searches and seizures. Contrary to Defendants' arguments, the Plaintiffs did not have the critical facts related to the injury at the time of the searches and seizures regarding the economic damages to be suffered afterwards, nor the malfeasance that underscored the searches and seizures. They could not have identified, predicted, or quantified these post search and seizure economic damages.

For these reasons Defendants arguments that the statute of limitations should run from August 14, 2019 fail.

In their Complaint, the Plaintiffs have alleged separate and distinct economic damages that occurred after the searches and seizures. If this Court finds the Defendants' limitations argument persuasive, the Court should strike only those claims for damages incurred at the time of the searches and seizures. The Court should not dismiss the Plaintiffs' claims for damages , particularly the economic damages, incurred on or after October 21, 2019. In reply, the Defendants may argue that the economic-loss rule applies and therefore, the Plaintiffs cannot recover in tort for purely economic damages occurring after the searches and seizures.

Under Texas law, the economic-loss rule bars a party from recovering in tort for purely economic losses suffered to the subject matter of a contract. *Sharyland Water Supply Corp. v. Alton*, 354 S.W.3d 407, 415, 418 (Tex. 2011). The Texas Supreme Court clarified that the economic-loss rule does not bar all tort causes of action in which a party seeks economic damages. *Alton*, 354 S.W.3d at 418. The Court further stated that to say that the economic-loss rule precludes tort claims between parties who are not in contractual privity and that damages are recoverable only if they are accompanied by actual physical injury or property damage overlooks all the tort claims for which courts have allowed recovery of economic damages even absent physical injury or property damage. *Id*. The Court held that the economic-loss rule applied only in cases involving defective products or failure to perform a contract. *Id.*

Recognizing the Texas Supreme Court's holding, the United States District Court for the Western District of Texas held that a cause of action for negligence that only seeks economic damages is not barred by or subject to the economic-loss rule and can proceed. *Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*, No. 1:11-CV-542-LY, 2013 WL 12093755, at *8 (W.D.

Tex. Jan. 31, 2013). Therefore, the Plaintiffs in the present case are not barred by the economic-loss rule in pursuing economic damages. In the unlikely event that this Court strikes the Plaintiffs' non-economic damages claims, the Plaintiffs' economic damage claims would survive the Defendants' motions to dismiss.

### III. <u>LEGAL STANDARD</u>

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether a plaintiff has stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

#### A. FRCP Rule 8(a)

Federal Rule of Civil Procedure 8(a) requires that a complaint provide "a short and plain statement of the claim" showing that the plaintiff is entitled to relief, thereby giving the defendant fair notice of the basis for relief.  See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Supreme Court has clarified that to satisfy Rule 8(a)(2) at the motion to dismiss stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.' "  *Aschcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556-57). Thus, all that is required to defeat a motion to dismiss is a complaint that sets forth sufficient factual allegations to plausibly support the relief requested. *See Twombly*, 550 U.S. at 570.

**B. FRCP Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint where a plaintiff fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss requires the court to determine whether a cognizable claim has been pleaded in the complaint. In reviewing a Rule 12(b)(6) motion for dismissal for failure to state a claim, the allegations in the complaint "should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Moreover, courts must accept "well-pleaded facts... as true." *United States ex rel. Riley v. St. Luke's Episcopal Hospital*, et al., 355 F.3d 370, 375 (5th Cir. 2004). "Factual allegations must be enough to raise a right to relief above the speculative level... on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ... *Twombly*, 550 U.S. at 555-556. To survive a motion to dismiss, a complaint only requires "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

A court should not dismiss on Rule 12(b)(6) grounds just because it "believes the plaintiff is unlikely to prevail on the merits." *Riley*, 355 F.3d at 376 (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236. Even where it appears "almost to a certainty to the court that the facts alleged cannot be proved to support the legal claim," the complaint may not be dismissed as long as it states a claim. *Boudeloche v. Grow Chem. Coatings Corp.*, 728 F.2d 759, 762 (5th Cir. 1984).

The Plaintiffs have pled sufficient facts to state a *prima facie* case against Sabban and Joy under *Bivens* or 42 U.S.C. § 1983. Along with the allegations of economic damages described above, the Plaintiffs have alleged the following specific facts:

a.  Sabban with Joy's assistance submitted to a U.S. Magistrate Judge an affidavit with material false statements to obtain void search warrants they used to search and seize Plaintiffs' property (Compl. ¶¶ 11, 21);

b. Sabban and Joy did not have probable cause to conduct their searches and seizures of Plaintiffs' property (Compl. ¶¶ 13, 15-16, 20-21);

c. the date when and the name of the Judge to whom Sabban and Joy presented their material false statements (Compl. ¶ 12);

d. the dates and locations of each search and seizure alleged to have been done by the Sabban and Joy (Compl. ¶ 13);

e. Sabban and Joy seized, damaged, or destroyed Plaintiffs' property (Compl. ¶ 15);

f. Sabban and Joy did not provide Plaintiffs with a copy of the search warrants (Compl. ¶¶ 13, 15);

g. Sabban and Joy detained Mr. Paul and Plaintiffs' employees (Compl. ¶¶ 14-18);

and

h. Sabban and Joy knowingly and intentionally acted to deprive Plaintiffs of their freedom, property, and economic opportunities (Compl. ¶ 20).

## IV. <u>BACKGROUND</u>

### A. THE FEDERALISTS

The Anti-Federalists sought the inclusion of a bill of rights in the United States Constitution to safeguard fundamental individual rights against government encroachment. The bill of rights was to include a right against an unlawful search and seizure.[1]  Ultimately, the

---

[1] The Federalist No. 84, (Alexander Hamilton); Anti-Federalist Centenel I (Samuel Bryan); Jeff Broadwater, *George Mason Forgotten Founder* 265-266, 271 (University of North Carolina Press, Kindle ed. 2006); Jack N, Rakove, *Original Meanings Politics and Ideas in the Making of the Constitution* 204, 420-421 (Vintage Books, Kindle ed. 1997).

Federalists agreed to add a bill of rights after the U.S. Constitution was ratified.[2]  The Federalists supported a separate and independent Judiciary that would protect the U.S. Constitution and fundamental individual rights against encroachment by the Legislative and Executive branches.[3]

The Federalists stated, "a Constitution is, in fact, and must be regarded by the Judges, as a fundamental law. It therefore belongs to them to ascertain its meaning, as well as the meaning of any particular Act proceeding from the Legislative body."[4]

> "This independence of the Judges is equally requisite to guard the Constitution and the rights of individuals, from the effects of those ill humors, which the arts of designing men, or the influence of particular conjunctures, sometimes disseminate among the People themselves, and which, though they speedily give place to better information, and more deliberate reflection, have a tendency, in the mean time, to occasion dangerous innovations in the Government, and serious oppressions of the minor party in the community."[5]

The Federalists proposed granting the Judiciary exclusive powers to decide all cases in law and equity that arose under the U.S. Constitution and the laws of the United States.[6] They proposed giving one supreme court original jurisdiction in certain cases and appellate jurisdiction in all other federal cases with such exception and under such regulation as Congress shall make.[7] The Congress would have the power to create inferior courts of original jurisdiction to relieve the supreme court of hearing all federal cases in their absence.[8] This was not intended to limit or restrict the inherent judicial powers of the Judiciary, but to divide the powers between the Supreme Court and inferior federal courts.

---

[2] Bryan, *supra* at 297.
[3] The Federalist No. 78, (Alexander Hamilton).
[4] *Id*.
[5] *Id*.
[6] The Federalist No. 80, (Alexander Hamilton).
[7] *Id*.
[8] *Id*.

**B. THE U.S. CONSTITUTION**

The United States Constitution is founded on and guided by the principles of limited government, separation of powers, and checks and balances amongst others. The U.S. Constitution limits the Legislative and Executive Branches' powers to those that are specifically delegated to them. Section 8, Article I, enumerates and/or delegates certain powers to the Legislative Branch including making laws to carry out the execution of all the federal government's powers.  U.S. Const. art. I, § 8. Sections 1 and 2, Article III, grants the Judicial Branch all the judicial powers to hear and decide all cases in law and equity that arise under the U.S. Constitution.  U.S. Const., art. III, §§ 1,2. While the U.S. Constitution grants the Legislative Branch the power to create inferior federal courts, it does not grant them the power to limit, restrict, or otherwise withhold the Judicial Branch's judicial powers. The U.S. Constitution grants the Legislative Branch the ability to regulate the Supreme Court's appellate jurisdiction. U.S. Const. art. III, § 2. Congress cannot deny original jurisdiction, but under certain circumstance can allocate original jurisdiction between the Supreme Court and the inferior courts.

In the first 12 amendments to the U.S. Constitution, neither the Legislative Branch nor the Executive Branch are given the power or authority to enforce these amendments including the Fourth or Fifth Amendment. The first 12 amendments reserve and protect certain fundamental individual rights against federal government encroachment. As the Anti-Federalist had argued, these amendments were necessary to put the federal government on notice and to protect citizens from unlawful acts, in word or deed, by the federal government or its agents. Unlike the first 12 amendments, Amendments 13-16, 18-20, 23-24, and 26 gave Congress new powers to enforce specific amendments (Amendments 13-15, 18-19, 23-24, 26), impose certain

taxes (Amendment 16), or enact new laws (Amendment 20).  The Fourteenth Amendment specifically states, "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article."  U.S. Const. amend. XIV, § 5.  As a result, Congress enacted the Civil Rights Act of 1871 with Section 1 codified now as 42 U.S.C. § 1983.

The Fourth and Fifth Amendments do not grant to Congress the power to enforce these amendments. This may explain one reason for the lack of specific legislation like 42 U.S.C. § 1983 to enforce or otherwise provide a cause of action to citizens whose rights under the Fourth or Fifth Amendments are infringed by the federal government. To preserve and protect fundamental individual rights, the Fourth and Fifth Amendments impose or place limitations on the federal governments' legislative and executive powers. The federal government cannot abrogate these fundamental individual rights through its legislative or executive powers. As a check on the federal government's legislative and executive powers, the Judiciary acts to protect these fundamental individual rights against federal government encroachment. Inherent in its judicial powers, the Judiciary has the legal authority to declare, enjoin, or compensate for the federal government's violation of these fundamental individual rights. The 14th Amendment enlarges these judicial powers to protect the citizen's fundamental individual rights against state governments encroachments and unlike the Fourth and Fifth Amendments, empowers Congress to enforce the same.

### C. JUDICIAL POWERS UNDER THE U.S. CONSTITUTION

Since the ratification of the United States Constitution, the Supreme Court has recognized and applied its judicial powers to protect the citizens' fundamental individual rights guaranteed by the U.S. Constitution. In *Bivens*, the Supreme Court exercised its Constitutional powers to protect a citizen's right to be free from unreasonable searches and seizures and appropriately

compensated the Plaintiff for the violation of his Fourth Amendment rights. The Supreme Court

has struck down federal laws or enjoined federal conduct that violated the citizens' fundamental

individual rights. Further, the Supreme Court has provided remedies to citizens for violations of

their fundamental individual rights. Under the 14th Amendment, the Supreme Court has

recognized and applied its judicial powers to protect citizens' fundamental individual rights

against state governments encroachments.

Before he became the Chief Justice of the Supreme Court, John Marshall had asserted

that the Supreme Court had implied judicial powers to protect and enforce the U.S. Constitution

against federal government actions that violated the U.S. Constitution.[9] In *Marbury v. Madison*,

Marshall held that the Supreme Court could decide through judicial review whether legislative

acts were unconstitutional and therefore void.  *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

Marshall pronounced, "It is emphatically the province and duty of the judicial department to say

what the law is. Those who apply the rule to particular cases, must of necessity., expound and

interpret that rule."  *Id*.  Further, he stated, "The judicial power of the United States is extended

to all cases arising under the constitution."  *Id*.  at 178.  Marshall held that the federal

government is a limited government with their powers defined and limited by the U.S.

Constitution.  *Id*. at 176.  In his opinion, Marshall declared the U.S. Constitution to be the

supreme law of the land.  *Id*. In *McCulloch v. Maryland*, Marshall reaffirmed that the U.S.

Constitution includes those implied powers necessary to carry out the expressed powers

conveyed by the Constitution.  *McCulloch v. Maryland*, 17 U.S. 316, 407 (1819). He held,

> "A constitution, to contain an accurate detail of all the subdivisions of which its
> great powers will admit, and of all the means by which they may be carried into
> execution, would partake of the prolixity of a legal code, and could scarcely be
> embraced by the human mind. It would, probably, never be understood by the
> public. Its nature, therefore, requires, that only its great outlines should be

---

[9] Joel Richard Paul, *Without Precedent* 49, 253-254 (Riverhead Books, Kindle ed. 2018)

marked, its important objects designated, and the minor ingredients which
compose those objects, be deduced from the nature of the objects themselves." *Id*.

From 1877 until his death in 1911, John Marshal Harlan served as a Justice on the

Supreme Court and was known as the Great Dissenter because of his dissents in cases restricting

citizens' civil liberties under the 13th, 14th, and 15th Amendments.[10]  In the *Civil Rights Cases*

*of 1883*, Harlan wrote in dissent that Congress had the power to enact laws, specifically the Civil

Rights Act of 1875, to enforce the 13th, 14th, and 15th Amendments against state governments

and its agents.  *Civil Rights Cases of 1883*, 109 U.S. 3, 50-55 (1883).  He opined that one branch

of government could not direct how another branch of government carried out its powers under

the U.S. Constitution.  *Id*. at 51. In *Plessy v. Ferguson*, Harlan again dissented against the

Supreme Court's majority who he saw as retreating from or abdicating their constitutional power

to enforce and uphold the 13th, 14th, and 15th Amendments against state governments.  *Plessy v.*

*Ferguson*, 163 US 537, 554-555 (1896). He reasserted his position that each branch of

government cannot usurp the powers delegated to another branch by the U.S. Constitution.  *Id*. at

558.  Harlan stated," Our institutions have the distinguishing characteristic that the three

departments of government are co-ordinate and separate. Each much keep within the limits

defined by the constitution." *Id.*

In a series of lectures, published as *The Nature of the Judicial Process*, Benjamin

Cardozo, a Supreme Court Justice from 1932 until his death in 1938, discussed how judges

decide or should decide cases.  Cardozo identified and expounded on four leading sources or

methods of legal analysis, namely logic, history, custom, and public policy, that aid a judge in

deciding difficult cases.[11]  Cardozo believed that judges should create law through judicial

---

[10] Peter S. Canellos, *The Great Dissenter*, 231-240, 375-382, 429-431 (Simon & Schuster, Kindle ed. 2021)
[11] Benjamin N. Cardozo, *The Nature of the Judicial Process*, 11-12 (Andrew L. Kaufman, Quid Pro Law Books, Kindle ed. 2010) (1921).

precedent or common law and fill the open spaces or gaps in the law.[12] He did not advocate or encourage judges to legislate outside gaps in the law and ignore or disregard statutes, precedent, or custom.[13]  He said, "I think adherence to precedent should be the rule and not the exception."[14] Yet, Cardozo did not believe that precedent was immovable and that it could be overruled. He stated, "I think that when a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment."[15] In discussing the decision-making process to be followed, Cardozo quoted the Swiss Civil Code of 1907, "In default of an applicable statute, the judge is to pronounce judgment according to the customary law, and in default of a custom according to the rules which he would establish if he were to assume the part of a legislator. He is to draw his inspiration, however, from the solutions consecrated by the doctrine of the learned and the jurisprudence of the courts."[16]

In *Bell v. Hood*, the plaintiffs sued individual FBI agents for illegal arrest, false imprisonment, and unlawful searches and seizures.  *Bell v. Hood*, 327 U.S. 678, 679 (1946). The plaintiffs alleged that the FBI agents' actions violated their Fourth Amendment rights to be free from unreasonable search and seizures and their Fifth Amendment rights to be free from deprivation of their liberty without due process of law.  *Id*. at 679. In seeking damages more than $3000 from the FBI agents, the plaintiffs asserted an implied cause of action directly from the Fourth and Fifth Amendments of the Constitution.  *Id*. The defendants sought to dismiss the case based on two arguments: the plaintiffs claim lay in a state common law action in trespass and the

---

[12] *Id*. at 65-66, 71-76.
[13] *Id*. at 70-71.
[14] *Id*. at 78.
[15] *Id*. at 79.
[16] *Id*. at 74-75.

Constitution did not expressly provide for recovery in money damages. *Id*. at 681. Rejecting

defendants' arguments, the Supreme Court held that the plaintiffs had alleged violations of the

Constitution and that federal courts had subject matter jurisdiction to infer a cause of action for

monetary damages under the Constitution. *Id*. In the Court's Opinion, Justice Black wrote,

"where the complaint, as here, is so drawn as to seek recovery directly under the Constitution or

laws of the United States, the federal court . . . must entertain the suit. *Id*. The *Bell* case set the

stage for the *Bivens* decision which correctly determined that a citizen can be compensated by

the judiciary for violations of his Fourth Amendment rights.

## V. <u>ARGUMENT</u>

### A. THE PLAINTIFFS HAVE MADE A *PRIMA FACIE* CASE

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, Justice Brennan

held that the Fourth Amendment operates as a limitation upon the exercise of federal power and

guarantees to citizens the absolute right to be free from unreasonable searches and seizures

carried out under federal authority. *Bivens v. Six Unknown Named Agents of Fed. Bureau of

Narcotics*, 403 U.S. 388, 392 (1971). Justice Brennan reiterated the holding in *Bell*, "where

federally protected rights have been invaded, it has been the rule from the beginning that courts

will be alert to adjust their remedies so as to grant the necessary relief" and "it is * * * well

settled that where legal rights have been invaded, and a federal statute provides for a general

right to sue for such invasion, federal courts may use any available remedy to make good the

wrong done." *Id*. The Supreme Court determined that there were no special factors counseling

hesitation in the absence of affirmative action by Congress and held that a person is entitled to

recover money damages for any injuries suffered because of federal agents' violation of

constitutional rights. *Id*. at 395-397. In his concurring opinion. Justice Harlan held that in the

absence of any statutory authorization of a damage remedy, federal courts have the power to grant damages for violations of the Constitution. *Id.* at 401-403. In *Bivens*, the Supreme Court held that the Constitution creates an implied cause of action. The Supreme Court held that a person could seek money damages against agents of the Federal Bureau of Narcotics for an unlawful search and arrest in violation of the Fourth Amendment.

Following the *Bivens* decision, the Supreme Court recognized an implied cause of action in *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980). In *Davis*, the Supreme Court held that a former congressional staff member could seek money damages against a U.S. Congressman for sexual discrimination in terminating her employment in violation of the Fifth Amendment's Due Process Clause. *Davis v. Passman*, 442 U.S. 228, 248-249 (1979). In *Carlson*, the Supreme Court held that the estate of a deceased federal prisoner could seek money damages against prison officials for failing to provide medical attention in violation of the Eight Amendment's prohibition against cruel and unusual punishment. *Carlson v. Green*, 446 U.S. 14, 24-25 (1980).

In *Ziglar v. Abbasi*, the Supreme Court established the standard for determining whether a case presents a new *Bivens* context. *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1859 (2020). The Supreme Court held, "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Id* at 1859. The Supreme Court provided examples including rank of officer; constitutional right; the official's actions; judicial guidance; law governing official's actions; or other special factors. *Id*. Once a court determines that a case presents a new *Bivens* context, the court must conduct a special factors analysis and determine whether "special factors counsel hesitation in the absence of affirmative action by Congress." *Id*. at 1855-1859. Further, a federal court should refrain from creating a remedy when there is an

adequate remedy at law or reasonable belief that Congress is not inclined to offer such relief. *Id*. The Supreme Court took the position that special factors included the government's cost to defend or indemnify federal officials. *Id*. The Supreme Court held that Congress, not the courts, had the responsibility to decide whether, and to what extent, federal officials could be liable for money damages. *Id*. The plaintiffs sought money damages against several federal executive officials and detention wardens for strip searches, detention, and abuse during detention in violation of the Fourth and Fifth Amendment. *Id. at* 1847. The Court held that special factors advised against extending *Bivens* to this set of facts. *Id*. at 1869.

In *Hernandez v. Meza*, the Supreme Court described the two-step process in determining whether an implied cause of action can proceed. First, a court determines whether a case presents a *Bivens* claim in a new context or involves a new category of defendants. *Hernandez v. Meza*, 140 S.Ct. 735, 743 (2020). If so, the court proceeds to the second step and determine whether special factors exist that counsel hesitation against granting the extension. *Id*. Central to the special factors analysis is consideration for the separation of powers principles. *Id*. The plaintiffs sought money damages against a U.S. Border Patrol Agent for shooting and killing a 15-year-old Mexican national across the U.S. Mexico border in violation of the Fourth and Fifth Amendments. *Id*. at 737. The Court held that this was a *Bivens* claim in a new context and special factors advised against extending *Bivens* to this set of facts. *Id*. at 750.

1. Plaintiffs' *Bivens* Claims Arise in a New Context

The Supreme Court has set a very low bar in determining whether a *Bivens* claim arises in a new context. If the case is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court, then the context is new. Here, Plaintiffs' case is undeniably different from

the facts in the previous *Bivens* cases decided by the Supreme Court. In this case, the Plaintiffs'

*Bivens* claims arise in a new context.

 2. <u>Special Factors Do Not Counsel Hesitation</u>

 The Court should allow the Plaintiffs' *Bivens* claims to proceed because there is no

adequate remedy at law or special factors that counsels against extending *Bivens*.

 Rule 41(g) of the Federal Rules of Criminal Procedure allows a person to file a motion

for the return of property seized or held by the government pursuant to an unlawful search and

seizure.  Fed. R. Crim. P. 41(g).  This procedure is far from certain that one, it will lead to the

return of property, and two, it will adequately compensate the Plaintiffs. The Plaintiffs have

requested that their property be returned or that they be granted access to their property to no

avail. A motion for return of property would be futile in the present circumstances and therefore,

this criminal rule of procedure does not provide an adequate remedy in fact. Further, there is no

economic recompense for the failure to return property. Rule 41(g) does not provide an adequate

remedy in fact or law for the claims set forth in the Complaint.

 A criminal defendant may move to suppress ill-gotten evidence under the exclusionary

rule, Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, or a *Franks* hearing.  *Davis v.*

*U.S.*, 564 U.S. 229, 231 (2011); Fed. R. Crim. P. 12(b)(3)(C); *Franks v. Delaware*, 438 U.S. 154

(1978).  Here, however, the Plaintiffs are not criminal defendants because there is no indictment

or criminal complaint. Furthermore, these criminal procedures are solely evidentiary rules

designed to keep out tainted evidence in a criminal trial. These criminal procedures are not

available now and uncertain to ever be available under the present circumstances. These criminal

procedures do not provide an adequate remedy in fact or law for the claims set forth in the

Complaint.

The Tucker Act gives the United States Court of Federal Claims subject matter jurisdiction to render judgment on any claim against the United States based on the Constitution, federal statute, federal regulation, or contract.  28 U.S.C. § 1491. The Plaintiffs have not made a claim against the United States or the Federal Bureau of Investigation (FBI). The Fifth Amendment claim against the Defendants is grounded on the Due Process Clause not the Takings Clause.  The Plaintiffs do not allege that the Defendants took their property under eminent domain for public use. The Tucker Act does not apply to law enforcement officers sued in their individual capacity for violation of the Fifth Amendment's Due Process clause. This civil remedy does not provide an adequate remedy in law for the claims set forth in the Complaint.

The Federal Tort Claims Act (FTCA) waives the United States' sovereign immunity to allow certain claims for damages against the United States arising from torts committed by government employees in the course of their employment with the federal government.  28 U.S.C. § 1346. The FTCA does not extend to any claim against a government employee for constitutional violations.  28 U.S.C. § 2679(2)(A). In *Oliva*, the Plaintiff suffered personal injuries and filed an FTCA claim against the United States.  *Oliva v. Nivar*, 973 F.3d 438, 444. Unlike *Oliva*, the Plaintiffs did not file nor claim to have an FTCA claim specifically for personal injuries. The Plaintiffs do not seek money damages for personal injuries caused by the negligence of the Defendants. Rather, the Plaintiffs seek compensation for damages, primarily economic damages, caused by the Defendants' violations of the Plaintiffs' Fourth and Fifth Amendment rights. The FTCA does not provide an adequate remedy in law or fact for the claims set forth in the Complaint.

The Plaintiffs claims do not pose any risk of intrusion on the Executive Branch's authority to enforce the law, conduct criminal investigations, or prosecute crimes. The Plaintiffs'

claims do not concern or question the federal government's laws, policies, or procedures (e.g., military affairs, national security, immigration, narcotics, financial services). The Plaintiffs specifically allege that the Defendants presented an affidavit with material false statements to a U.S. Magistrate Judge to obtain search warrants that they used to conduct the searches and seizures of the Plaintiffs' property. The Plaintiffs allege that without these material false statements, there was no probable cause to search or seize the Plaintiffs' property. Therefore, the Defendants' searches and seizures were unreasonable in violation of the Fourth Amendment and the Defendants' possession of the Plaintiffs' property was a violation of the Fifth Amendment's Due Process Clause. The Plaintiffs do not raise any claims related to enforcement of law, conduct of criminal investigations, or criminal prosecution. The Plaintiffs only claim constitutional violations resulting from a lack of probable cause due to the submission of an affidavit with material false statements to a U.S. Magistrate which caused him to issue void search warrants. Every law enforcement officer knows or should know that he should never submit, knowingly and intentionally or with reckless disregard for the truth, an affidavit in support of an application for a search warrant that contains material false statements. This is a universal or fundamental truth that does not require any analysis of the government's investigative policies, procedures, or methods.

The Plaintiffs do not seek to interfere with or compromise any government investigation. The Plaintiffs believe that they can pursue their constitutional claims without interfering with any government investigation. The Court should allow the Plaintiffs to proceed with their *Bivens* claims. Otherwise, the Plaintiffs will be left without an adequate remedy Further, any future potential criminal remedies do not provide an adequate remedy for the Plaintiffs' economic damages caused by the Defendants' constitutional violations.

There are no special factors that counsel hesitation against recognizing an implied cause of action under the Fourth Amendment or the Fifth Amendment. For these reasons, the Defendants' motions to dismiss should at this time be denied.

### B. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). To defeat a qualified immunity defense, a plaintiff must allege sufficient facts to establish a violation of a constitutional right and at the time of defendant's alleged misconduct, the constitutional right was "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In light of prior law, the unlawfulness of defendant's conduct must be apparent and qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law. *Ziglar* at 1867.

In *Franks*, the Supreme Court clearly established that a law enforcement officer violates the Fourth Amendment when he knowingly and intentionally or with reckless disregard for the truth presents an affidavit with material false statements in support of an application for a search warrant that would not otherwise issue for lack of probable cause. *Franks* at 155. The Fifth Circuit had adopted and applied the *Franks* holding to its cases. *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017). The clearly established violation of the Fourth Amendment goes to an unreasonable search or unreasonable seizure. The Plaintiffs have alleged sufficient facts to establish a violation of the Fourth Amendment to both the searches and seizures of their property. The Plaintiffs alleged that the Defendants prepared and presented an affidavit with material false statements and omitted facts without which the search warrants would not have

issued. The affidavit is under seal with the court who issued the search warrants and therefore could not be included with or quoted in the Complaint.

For these reasons alone, the Defendants have not established that they are entitled to qualified immunity under *Bivens* or 42 U.S.C. § 1983 and their motions to dismiss at this time should be denied.

## VI. <u>CONCLUSION</u>

The Defendants in this case violated one of the most sacrosanct covenants between the government and the American People:  constitutional rights. Under *Bivens*, this case should proceed because there is no adequate remedy at law or other special factors that counsel hesitation against recognizing an implied cause of action under the Fourth Amendment or the Fifth Amendment. Defendants are not entitled to Qualified immunity as an excuse for their unlawful behavior, the deliberate violations of the Plaintiffs' Fourth and Fifth Amendment rights. The Plaintiffs respectfully request that this Court deny the Defendants' motions to dismiss.

Respectfully submitted,

CLARK HILL PLC

BY:     /s/  *Jose Vela Jr.*
Jose Vela Jr.
Attorney in Charge
Texas State Bar No. 24040072
909 Fannin Street, Suite 2300
Houston, Texas 77010
713.951.5607
713-951-5660 (fax)
jvela@clarkhill.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing *Plaintiffs' Respond to Defendants' Motions to Dismiss* was mailed via first class mail or electronic mail (ECF) on May 25, 2022, to the following:

<u>Counsel for Rani Sabban</u>

Karson Karl Thompson
Butler Snow LLP
1400 Lavaca Street, Suite 1000
Austin, TX 78701
karson.thompson@butlersnow.com

Randy T. Leavitt
1301 Rio Grande
Austin, TX 78701
randy@randyleavitt.com

<u>Counsel for Preston Joy</u>

David Gregory Cutler
Juliana MacPherson Barrett
U.S. Department of Justice, Civil Division
P.O. Box 7146,
Benjamin Franklin Station
Washington, DC 20044-7146
david.g.cutler@usdoj.gov
juliana.m.barrett@usdoj.gov

 /s/  *Jose Vela Jr.*
Attorney-in-Charge