IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| NATIN PAUL, WORLD CLASS HOLDING COMPANY, LLC; and WORLD CLASS HOLDINGS MANAGEMENT, LLC, § § § § § Plaintiffs, § § v. § § RANI A. SABBAN, Investigator, Texas State Securities Board, in his individual capacity; PRESTON JOY, Special Agent, Federal Bureau of Investigation, in his individual capacity; DOES 1-40, Special Agents, Federal Bureau of Investigation, in their individual capacities; and DOES 41-100, Law Enforcement Officers, in their individual capacities, § § § § § § § § § § § § § Defendants. § | CIVIL ACTION NO. 1:21-CV-00954-LY |

## **DEFENDANT RANI SABBAN'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), and in response to Plaintiffs Natin Paul, World Class Holding Company, LLC, and World Class Holdings Management, LLC's (collectively, "Paul") Response to Defendants' Motions to Dismiss (Dkt. #25), Defendant Rani Sabban files this Reply in support of his Motion to Dismiss.

## **ARGUMENT**

Paul's Response maxes out the Court's page limit but says little about the legal issues presented in Sabban's motion to dismiss. The Response opens with a recitation of alleged "facts" that are not found in Paul's Complaint and are therefore meaningless and off limits to this Court at the Rule 12 stage. *See* Resp., at 1. It offers a lengthy history lesson that provides no help to the Court in applying established Fifth Circuit rules. *See* Resp., at 6-13. And where it

1

engages with Sabban's arguments, it does nothing to fix the inherent flaws in the Complaint or to distinguish the handful of controlling authorities that command a dismissal of Paul's claims as pleaded. Sabban's motion to dismiss should be granted.

**I.      Paul's claims are still barred by the statute of limitations.**

The parties largely agree on the rules: Paul's claims are barred by limitations if they accrued before October 21, 2019. At minimum, then, the Court should dismiss all claims that accrued on the date the search warrants were executed: August 17, 2019. Sabban contends all of Paul's claims accrued at that time; Paul contends some accrued later, "on or after October 21, 2019," because that is when Paul allegedly incurred or discovered his "economic damages." To the extent Paul intends to tie the accrual date to his alleged receipt of a copy of a search warrant on October 21, 2019 (Compl. ¶22), he fails to explain how that event triggered any alleged economic damages.

Paul's theory that his claims accrued as his alleged consequential damages appeared is directly contrary to United States Supreme Court precedent and black-letter tort law. *Wallace v. Kato*, 549 U.S. 384, 388, 391 (2007). The "standard rule" is that a claim accrues "when the plaintiff has a complete and present cause of action," meaning he may "file suit and obtain relief." *Id.* at 388 (cleaned up). Accrual occurs "even though the full extent of the injury is not then known or predictable." *Id.* at 391. The rule must work this way to work at all. "Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id.*

The facts of *Wallace* illustrate how this rule applies in this case. In *Wallace*, the plaintiff alleged his § 1983 claim for false imprisonment accrued on the date he was released from

custody because he was "seeking damages up to that time." *Id.* at 391. The Court disagreed, holding his claim accrued when his false imprisonment ended (his arraignment),[1] regardless of the fact that his consequential damages may have been incurred later. *Id.* The same is true for Paul. His claims accrued when he was allegedly injured by the wrongful searches and seizures of his property, regardless of the fact that he may have only later incurred various forms of consequential damages like "loss of economic opportunities."

Paul cites no case law supporting his argument that a cause of action can be fractured into multiple claims all accruing at different times as different consequential damages are realized. That is not the law and would result in the precise problem the Supreme Court sought to avoid in *Wallace*. *Id.* A plaintiff cannot hold his accrual date hostage by claiming he continues to suffer new consequential damages. Like other alleged victims of wrongful searches and seizures, Paul's claims accrued when the allegedly wrongful searches and seizures happened, not months later when he decided he was sufficiently damaged. *See* Sabban's Mot. (Dkt. #22), at 4-5 (citing *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162, 2170-72 (2019); *Stringer v. Town of Jonesboro*, 986 F.3d 502, 511 (5th Cir. 2021); *Moore v. McDonald*, 30 F.3d 616, 621 (5th Cir. 1994); *Jaramillo v. Renner*, 697 Fed. App'x 326, 326 (5th Cir. 2017) (unpublished); and *Humphreys v. City of Ganado, Tex.*, 467 Fed. App'x 252, 255 (5th Cir. 2012) (unpublished)). Paul makes no effort to cite or distinguish these cases and they are fatal to his claims.

## II.  Paul has abandoned his pleaded "Fifth Amendment" claims.

As the Court knows from its review of Paul's Complaint, Paul has pleaded two Fifth Amendment Takings claims. *See* Compl. (Dkt. #1), at 7, 10. In his Response, Paul apparently

---

[1] This particular application of the accrual rule is unique, because the law assumes those falsely imprisoned will be unable to sue while being so imprisoned, and thus conditions accrual upon the end of the false imprisonment (which, as in *Wallace*, may not coincide with the person being released from custody). *Wallace*, 549 U.S. at 389. Notwithstanding the quirks of the false imprisonment cause of action, the baseline rule remains that claims accrue when a person can file suit. *Id.* at 388.

abandons both of those claims. First, he expressly concedes he has no Takings Clause claims. *See* Resp., at 18 ("The Fifth Amendment claim against the Defendants is grounded on the Due Process Clause not the Takings Clause."). Second, he fails to respond in any way to Sabban's argument that no takings occurred here as a matter of law. The Court should therefore dismiss Paul's "Second" and "Fourth" causes of action that alleged a "Takings or Deprivation of Property in Violation of the Fifth Amendment."

To the extent Paul's Response attempts to reframe those two causes of action as asserting "Fifth Amendment Due Process" claims, the Court should reject that attempt to informally amend the Complaint. The Complaint never invokes the Fifth Amendment's Due Process Clause and the phrase "due process" never appears in it. There is no explanation in the Complaint of what "Due Process" theory is purportedly being pursued. The Response is no more helpful in understanding this unpleaded legal theory. The only due process case cited in the Response is *Davis v. Passman*, 442 U.S. 228 (1979), one of the original "*Bivens* trio" cases that involved a Fifth Amendment Due Process Clause equal protection claim. Paul is obviously not asserting gender discrimination like Shirley Davis did. *See Davis*, 442 U.S. at 235. Paul asserted Fifth Amendment Takings Clause claims, and the Court should hold him to his pleadings and dismiss those claims.

**III.     Paul has not justified a novel expansion of *Bivens*.**

Since Sabban filed his motion, the United States Supreme Court decided yet another case declining to imply a cause of action under *Bivens*. *Egbert v. Boule*, 596 U.S. ___ (June 8, 2022), copy attached as **Exhibit A**. That decision marks the twelfth such opinion to come out of the Supreme Court in the four decades since *Bivens*, and it reversed the Ninth Circuit for creating two *Bivens* claims despite that long history counseling against doing so. *See id.*, at 1, 9. As the

Court explained, it is the job of Congress, not the courts, to create causes of action "in all but the most unusual circumstances." *Id.* at 1; *see also id.* at 7 (Congress should decide existence of damages remedies "in most every case"). In this regard, this case is no different than the legion of similar efforts to expand *Bivens* that have been rejected by the courts.

Paul concedes that his *Bivens* claims arise in a "new context." The only dispute is therefore whether or not this Court should "engage in the disfavored judicial activity of recognizing a new *Bivens* action." *Oliva v. Nivar*, 973 F.3d 438, 443 (5th Cir. 2020). The Fifth Circuit has directed courts to refrain from creating new *Bivens* claims any time the "remarkably low" threshold showing of any "special factor counseling hesitation" is made. *Canada v. United States*, 950 F.3d 299, 309 (5th Cir. 2020). And as the Supreme Court just held in *Egbert*, the "uncertainty" created by a potential *Bivens* claim arising in a "new context" is itself "a special factor that forecloses relief." *See Egbert*, **Ex. A**, at 8.

Paul's Response barely nods at the legion of recent Fifth Circuit cases rejecting requests to extend *Bivens*. He does not even cite *Cantu v. Moody*, 933 F.3d 414 (5th Cir. 2019), in which the Fifth Circuit declined to extend *Bivens* to the exact kind of claim Paul makes here: a Fourth Amendment claim that officers falsified affidavits. *Cantu*, 933 F.3d at 423. *Cantu* is on all fours with Paul's allegations and Paul simply has no answer for its holding. He similarly ignores *Byrd v. Lamb*, 990 F.3d 879 (5th Cir. 2021), in which the Fifth Circuit declined to extend *Bivens* to claims for excessive force and unlawful detention because Congress had chosen "not [to] make individual officers statutorily liable" for those types of claims." *Byrd*, 990 F.3d at 882. The same is true in this case.

The only "special factor" case Paul does cite is *Oliva*, which of course held that special factors counseled *against* extending *Bivens* to claims brought under both the Fourth and Fifth

Amendments.  *Oliva*, 973 F.3d at 440-41.  One reason the Fifth Circuit reached that conclusion was that the Federal Tort Claims Act provided an alternative remedy for recovering damages, and "when alternative methods of relief are available, a *Bivens* remedy usually is not."  *Id.* at 444 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017)); *see also Egbert*, **Ex. A**, at 8-9.  Paul attempts to distinguish *Oliva* by arguing that the FTCA does not provide an adequate remedy for his claims seeking "primarily economic damages."  The Supreme Court says that distinction does not matter.  *Egbert*, **Ex. A**, at 13-14 ("the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts").  And the Fifth Circuit unsurprisingly rejected a version of Paul's argument in *Oliva*.  The court explained that it is immaterial whether the FTCA provides "the exact same kind of relief *Bivens* would."  *Id.* at 444.  It is enough that the FTCA provides *some remedy* for Paul's claims, because the existence of any statutory remedy counsels against the courts creating remedies of their own.  *See id.*; *see also* 28 U.S.C. § 2679(b)(1) (statutory "remedy against the United States" for "injury or loss of property" is an "exclusive" remedy).

In sum, the *Bivens* inquiry reduces to a straightforward question: "is there *any* rational reason (even one) to think that *Congress* is better suited" to perform the kind of cost-benefit analysis attendant to creating damages remedies than this Court?  *Egbert*, **Ex. A**, at 11.  Because many of the same "special factors" that counseled against extending *Bivens* in *Egbert*, *Cantu*, *Byrd*, *Oliva*, and other authorities cited in Sabban's motion also exist here, Paul's *Bivens* claims should be dismissed.

**IV.     Paul has not adequately pleaded any Fourth Amendment claim.**

Sabban's Motion identified the specific deficiencies in Paul's factual allegations with respect to his Fourth Amendment claims.  *See* Sabban's Mot., at 9-10.  Paul does not contest

those specific deficiencies, nor does he dispute that a plaintiff who merely pleads (as Paul did) that a warrant contains false statements fails to establish a colorable *Franks* claim. *Terwilliger v. Reyna*, 4 F.4th 270, 282-83 (5th Cir. 2021). Instead, he defends his conclusory allegations as "sufficient" with an equally conclusory statement supported by no citation to any authority. *See* Resp., at 19. Paul has no response for *Terwilliger*, which explains that plaintiffs must specifically identify particular false statements and material omissions in order to allege "a *Franks* violation sufficient to withstand the test of *Iqbal/Twombly*." *See Terwilliger*, 4 F.4th at 282-83; *see also Franks v. Delaware*, 438 U.S. 154, 171 (1978). There can be no dispute that Paul's Complaint does not meet that standard.

Paul appears to argue that his failure to adequately plead his Fourth Amendment claims should be excused because the search warrant affidavit he is challenging is under seal with this Court. *See* Resp., at 20. Paul cites no authority suggesting that federal pleading standards do not apply to *Franks* claims, and *Terwilliger* makes clear that they do. Insulating *Franks* claims like Paul's from Rule 12 challenge and review would create an end-run around federal pleading rules and effectively overrule *Twombly* and *Iqbal*. There is no legal basis to hold Paul to a different standard than every other federal plaintiff.

Further, by filing the Complaint, Paul's counsel certified to this Court that the allegations in that pleading "have evidentiary support." FED. R. CIV. P. 11(b)(3).[2] That includes the repeated allegation that the search warrant affidavit contained "false material statements." Whatever "evidentiary support" exists for that allegation should presumably provide Paul with the ability to specifically articulate what false material statements were made and what material

---

[2] Rule 11 also contemplates that counsel may be aware of factual allegations that counsel believes "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(3). But the Rule requires that any such allegations be "specifically so identified," usually using the phrase "on information and belief." *See id.* Paul did not allege falsity "on information and belief."

facts were omitted from the affidavit. It is not necessary for Paul to quote the affidavit or attach it to the complaint. This Court can obviously review the sealed affidavit in its entirety *in camera* to conduct the *Franks* analysis.

It is also worth noting that Paul does not deny having already seen or otherwise been informed of the contents of the affidavit. And there is reason to believe he may have such knowledge. For example, a publicly available lawsuit alleges that in 2019 and 2020 Paul's attorneys made Texas Public Information Act requests to the Texas State Securities Board and Texas Department of Public Safety for records related to the searches at issue in this case. *See* Plaintiffs' Second Amended Original Petition and Verified Motion for Temporary Injunction and Permanent Injunction, *Brickman et al. v. Office of the Attorney General of the State of Texas*, No. D-1-GN-20-006861 (250th Judicial District Court, Travis County, Texas) (filed February 9, 2021), at 12-14.[3] The lawsuit further alleges that the Texas Attorney General, a known friend of Paul, took personal possession of a file from his office's Open Records Division that "included documents sealed by a federal court" and "did not return it for approximately seven to ten days." *Id.* This Court should therefore at least be skeptical of any argument that Paul could not possibly know the contents of the affidavit in order to plead his *Franks* claims with specificity, should he choose to make that argument in this case.

Because Paul has failed to adequately plead his Fourth Amendment claims, he has also failed to plead specific facts necessary to overcome Sabban's qualified immunity defense. *Terwilliger*, 4 F.4th at 284; *Benfield v. Magee*, 945 F.3d 333, 336-37 (5th Cir. 2019). His Fourth Amendment claims should be dismissed.

---

[3] A copy of the pleading is attached for the Court's convenience as **Exhibit B**.

**CONCLUSION**

For the foregoing reasons, Defendant Rani Sabban respectfully requests the Court grant his motion to dismiss, enter a final judgment dismissing Paul's claims with prejudice, and award Sabban all further relief to which he is entitled.

    Respectfully submitted,

**LAW OFFICES OF RANDY T. LEAVITT**

By: */s/ Randy Leavitt*
    Randy T. Leavitt
    State Bar No. 12098300
    randy@randyleavitt.com
    1301 Rio Grande
    Austin, Texas 78701
    Tel: (512) 476-4475
    Fax: (512) 542-3372

**BUTLER SNOW LLP**

By: */s/ Karson Thompson*
    Karson Thompson
    State Bar No. 24083966
    karson.thompson@butlersnow.com
    1400 Lavaca Street, Suite 1000
    Austin, Texas 78701
    Tel: (737) 802-1800
    Fax: (737) 802-1801

    ATTORNEYS FOR DEFENDANT
    RANI SABBAN

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2022, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system.

    */s/ Karson Thompson*
    Karson Thompson